DEPARTMENT OF LABOR AND INDUSTRIES & another[1] *vs.*
BOSTON WATER AND SEWER COMMISSION & another.[2]

Suffolk.   June 6, 1984. — October 4, 1984.

Present: GRANT, KASS, & SMITH, JJ.

*Administrative Law*, Adjudicatory proceeding, Regulations, Judicial review.
   *Department of Labor and Industries*. *Contract*, Public works, Bidding
   for contract. *Public Works*, Bidding procedure.

In an action by the Department of Labor and Industries and the second lowest
   bidder on a public construction project challenging the Boston Water
   and Sewer Commission's action in awarding the contract to a company
   which had submitted the low bid containing a unit price of one penny
   per square foot on a certain item in the contract, the judge erred in
   entering a final judgment declaring that the penny bidding of the low
   bidder was unlawful solely on the basis that the Department had adopted
   a "policy" against penny bidding. [624-625]
The Boston Water and Sewer Commission properly awarded a contract for
   the construction of sewer lines to a company which submitted the low
   bid containing a unit price of one penny per square foot on a certain
   item in the contract where, although the Department of Labor and Indus-
   tries ordered the commission to reject the low bid on the basis that the
   department had adopted a policy against penny bidding, the department's
   finding that the bid was not "unbalanced," "front-end-loaded" or other-
   wise artificially inflated indicated no violation of the public bidding
   statutes. [625-627]

CIVIL ACTION filed in the Superior Court Department on
July 22, 1983.
The case was heard by *John Paul Sullivan*, J.
*Sally A. Corwin* for Boston Water and Sewer Commission.
*Steven J. Comen* for R.J. Longo Construction Co., Inc.
*John D. O'Reilly, III*, for Schiavone Construction Company.

[1] Schiavone Construction Company.

[2] R.J. Longo Construction Co., Inc.

*Peter Waltonen* for Department of Labor and Industries.

SMITH, J. Pursuant to G. L. c. 30, § 39M, as amended by St. 1977, c. 970, § 1, the Boston Water and Sewer Commission (commission) in May, 1983, invited bids for the construction of two miles of underground sewer lines. The bid documents provided that the commission reserved the right to reject any bid if deemed to be in its best interest and any bid which might be "unbalanced."[3] R.J. Longo Construction Co., Inc. (Longo), was the lowest bidder at $18,236,938, and Schiavone Construction Company (Schiavone) was the second lowest bidder at $20,216,612. An examination of Longo's bid showed that it contained a unit price of one penny per square foot for temporary sheeting. Schiavone lodged a protest, claiming that Longo's bid should be rejected as unbalanced and because it contained an unrealistic price for temporary sheeting.[4]

The Department of Labor and Industries (DOLI) held an "informal" hearing on the protest. It found that the bid was not unbalanced, as there was no evidence that Longo had inflated any other unit price to recoup monies lost from the penny unit price. It concluded, however, that the penny bid did not accurately reflect the total cost of the item and, as such, was unrealistic, unresponsive and violative of DOLI policy. It instructed the commission to reject Longo's bid. The commission ignored the instruction and voted to recommend that the contract be awarded to Longo.

As a result of the action of the commission, DOLI and Schiavone filed a complaint for declaratory relief in the Superior Court seeking an injunction against the awarding of the contract to Longo. The complaint also sought a declaration that Longo's bid was invalid and that DOLI's decision was correct. A judge granted a preliminary injunction, as requested. He concluded, however, that the record before him was insufficient to deter-

---

[3] An "unbalanced" bid contains an abnormally low price for one item and an abnormally high price for another item in order to recoup losses from the abnormally low price.

[4] Schiavone had bid a price of $1,515,000 for temporary sheeting as contrasted to Longo's $5,500. At least five other contractors had also inserted a one penny per square foot price on the item.

mine whether the award to Longo violated applicable statutes and "remanded" the matter to DOLI for further findings. Pursuant to the judge's order DOLI conducted another hearing. It again found that Longo's bid was not unbalanced and also concluded that the bid was not front-end-loaded.[5] It adhered to its original position and explained that the basis for its instruction to the commission to reject Longo's bid was one of policy. It stated that it had found that "because of the potential bid manipulation and the possible resulting harm to the awarding authority and the general public that unrealistic bids must be rejected as unresponsive to the bid requirements." The matter came back before the judge. The judge stated that "DOLI has taken the position that [Longo's] penny bidding of certain items of the contract is unlawful even where the bid is not facially unbalanced. This position is taken as a result of DOLI's interpretation of the law and on a long standing publicly known policy against any form of penny bidding. The [c]ourt adopts the legal position of DOLI." The judge, stating that the role of the court was "very limited," issued a permanent injunction restraining the commission from awarding the contract to Longo[6] and entered a final judgment declaring that the penny bidding of Longo was unlawful and ordering the commission either to accept the bid of the next lowest responsible bidder or reject all bids.[7]

---

[5] A "front-end-loaded" bid contains abnormally high prices for items that the owner pays for first, so the bidder gets paid more in the beginning than the actual value of the work that has been done.

[6] Longo and the commission petitioned a single justice of this court for relief from the permanent injunction ordered by the judge. The single justice dissolved the injunction. Pending the appeals of Longo and the commission, a single justice of the Supreme Judicial Court denied Schiavone's petition to invoke the court's power under G. L. c. 211, § 3.

[7] It is apparent from his comments and his action in remanding the matter to DOLI for further findings that the judge was under the mistaken belief that the proceedings conducted by DOLI on the protest of Schiavone were adjudicatory in nature and covered by G. L. c. 30A. Under the provisions of G. L. c. 149, § 44H (see note 9, *infra*), the Commissioner of DOLI or his designee is given the power to investigate the facts to determine if there has been a violation of §§ 44A through 44H, inclusive, of G. L. c. 149 or of § 39M of G. L. c. 30 and to institute proceedings in the Superior Court to

There appears to be no case in Massachusetts that has determined that penny bidding, by itself, violates the public bidding statute. We have discovered no statute that explicitly forbids penny bidding in the public bidding sector. DOLI specifically found that Longo's bid was not "unbalanced," "front-endloaded" or otherwise artificially inflated.[8] There was, thus, no direct violation of any of the public bidding statutes. See G. L. c. 149, § 44H.[9] The judge ruled against Longo and the commission because DOLI had adopted a "policy" against penny bidding. Both defendants contend that DOLI's policy, a blanket prohibition against penny bidding, partakes of a rule or regulation which has the force and effect of law. DOLI, they cor-

---

enjoin the award of a contract if a violation is found. The definition of "adjudicatory proceedings" in G. L. c. 30A, § 1(1)(*a*), inserted by St. 1954, c. 681, § 1, states in part that adjudicatory proceedings for the purposes of G. L. c. 30A "[do] not include . . . (*a*) proceedings solely to determine whether the agency shall institute or recommend institution of proceedings in a court." Thus, the proceedings before DOLI are not covered by G. L. c. 30A. It follows, therefore, that once DOLI institutes a proceeding in the Superior Court to restrain either the award or the performance of a contract, its determination to institute the action or any record compiled by it carries no weight. The proceeding in the Superior Court is de novo, and DOLI must prove its case at a hearing at which its interpretation of statutory provisions is legally irrelevant.

Here, DOLI offered no admissible evidence in court that Longo had violated any statute. The judge should have dismissed the action for lack of prosecution. We refrain from ordering such action because it makes no difference in the ultimate result and because we believe it is of some importance that our views as to the legality of penny bidding be expressed, in order to prevent other actions on the point.

[8] In fact, if Longo had used Schiavone's price for temporary sheeting ($1,515,000) instead of its own figure ($5,500), its total bid would still have been approximately $475,000 lower than that of Schiavone.

[9] General Laws c. 149, § 44H, as appearing in St. 1980, c. 579, § 55, provides in pertinent part: "[T]he commissioner of labor and industries or his/her designee shall enforce sections forty-four A through forty-four H, inclusive of this chapter and section thirty-nine M of chapter thirty. S/he shall have all the necessary powers to require compliance therewith including the power to institute and prosecute proceedings in the superior court to restrain the award of contracts and the performance of contracts in all cases where, after investigation of the facts, s/he has made a finding that such award or performance has resulted in a violation, directly or indirectly, of the provisions of said sections forty-four A through forty-four H, inclusive, or of said section thirty-nine M . . . ."

rectly argue, does not have the statutory authority to promulgate such a rule or regulation and the subsequent action of the judge in adopting the position of DOLI was error.

Indeed, there is no evidence in the record that DOLI has ever purported to adopt any rule or regulation forbidding penny bidding. Further, an examination of the pertinent statutes does not show that the Legislature has conferred on DOLI the authority to make a rule of the type it here seeks to enforce under the label of "policy." *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, 721 (1983) ("an agency's power to make regulations [must be] delegated by the Legislature"). Under the provisions of G. L. c. 149, § 44H, as we observed in n.7, the Commissioner of DOLI is given the power to investigate the facts to determine if there has been a violation of §§ 44A through 44H of G. L. c. 149 or of § 39M of G. L. c. 30, and to institute proceedings in the Superior Court to enjoin the award of a contract if a violation is found. This power does not concern rule making but rather is investigatory in scope. See *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 239-240 (1960). Under G. L. c. 23, § 3, as amended through St. 1981, c. 351, § 233, the Commissioner may prepare "rules and regulations for the conduct of [DOLI] and all other rules and regulations which [DOLI] is by law authorized to make" but this power does not authorize the promulgation of any rule or regulation of the type that DOLI seeks to enforce here.[10]

On appeal, DOLI and Schiavone argue another ground in support of the judge's decision. They claim that the judge has

---

[10] We recognize that administrative policy and interpretations may be announced in a manner less formal than the publication of regulations. *Board of Educ.* v. *School Comm. of Amesbury,* 16 Mass. App. Ct. 508, 515 (1983). There is no indication in the record that any policy of DOLI had been "circulated or available to the parties likely to be concerned by memorandum, bulletin, letter, or other form of communication." *Id.* at 516. The judge, in one of his memoranda, identified the policy of DOLI against penny bidding as "publicly known." There is nothing in the record before us that shows the source of that conclusion. The fact that at least five of the bidders bid a penny on the item (note 4, *supra*) suggests that the "policy" of DOLI was not "publicly known."

the power to prohibit penny bidding, as matter of law, because it is unrealistic and thus violates the "equal footing" principle set out in *Interstate Eng'g Corp.* v. *Fitchburg,* 367 Mass. 751, 757-758 (1975).[11] The judge, however, clearly stated in a memorandum that accompanied his decision that the sole basis for his ruling was the adoption of a policy by DOLI against penny bidding. Nowhere does the record contain any suggestion that the judge based his decision on the ground now argued by DOLI and Schiavone.

In any event, it appears that DOLI and Schiavone have confused the "equal footing" principle with certain advantages which may be possessed by any bidder. Every bidder on a construction contract, public or private, has varying degrees of experience, ingenuity and resources. Some have more experienced and capable estimators, supervisors, and workers. Some already own equipment and materials that the job requires which other bidders must purchase or rent.[12] The public bidding statute encourages the use of these advantages because the statute "emphasizes the part which efficient, low-cost operation should play in winning public contracts." *Id.* at 758. The use of these advantages has no bearing on the "equal footing" principle. So long as bidders have the opportunity to bid in the same way, on the same information, and to bear the same risk of rejection, fairness and equality are preserved. *E. A. Berman Co.* v. *Marlborough,* 11 Mass. App. Ct. 1009, 1010 (1981). Here, Longo's bid was found by DOLI not to be "unbalanced", "front-end-loaded" or otherwise artificially inflated. The fact that Longo bid a nominal amount for an item

---

[11] In *Interstate Eng'g Corp.* v. *Fitchburg, supra,* the court, in discussing the fundamental objectives underlying G. L. c. 149, §§ 44A-44L, stated that "the statute establishes an honest and open procedure for competition for public contracts and, in so doing, places all general contractors and subbidders on an equal footing in the competition to gain the contract." *Id.* at 758. Also see *James J. Welch & Co.* v. *Deputy Commr. of Capital Planning & Operations,* 387 Mass. 662, 666 (1982).

[12] Longo submitted an affidavit to DOLI which was not disputed. In the affidavit, it stated that it had recently performed a similar job and already had on hand large quantities of the sheeting, materials, and equipment needed for the job.

does not, by itself, invalidate its bid. Under G. L. c. 30, § 39M, the commission had the power to determine which bidder was the lowest responsible and eligible bidder. Its award of the contract to Longo must stand.

The judgment is reversed, and a new judgment is to issue declaring that the commission has the power to award the contract to Longo.

*So ordered.*