**STATE of Missouri, Respondent,**

v.

**Wiley DAVIS, Appellant.**

**Wiley DAVIS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55801, 60209.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 25, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 24, 1992.

Application to Transfer Denied April 21, 1992.

Lisa Clover, St. Louis, William J. Swift, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Wiley Davis appeals from the judgment entered by the trial court after a jury found him guilty of two counts of second degree robbery in violation of Section 569.-030, RSMo 1986, and one count of stealing in violation of Section 570.030, RSMo 1986. The trial court found defendant to be a prior and persistent offender on all three counts, a class X offender on the two robbery counts, and sentenced defendant to two consecutive terms of twenty years' imprisonment for the robberies and a concurrent five year term on the stealing charge for a total of forty years' imprisonment. Wiley Davis also appeals the denial without an evidentiary hearing of his Rule 29.15 motion. We affirm the judgment and sentence of the trial court and the judgment of the court on defendant's Rule 29.15 motion.

A detailed accounting of the evidence is not necessary since its sufficiency to support the verdict is not challenged. Defendant stole a purse from Flavella Simms outside a National supermarket in the City of St. Louis on July 1, 1987; stole a purse from Lucille Harmon outside a Big B supermarket on July 3, 1987; and stole a wallet from Lovie Haynes outside the same supermarket on July 5, 1987. Defendant also tried to cash a check drawn on Simms' account at Normandy Bank the day after he robbed her. All three victims positively identified defendant as the culprit at trial and before trial either in a lineup or in a photo array. Based on this evidence, the jury found defendant guilty of robbery and stealing.

Defendant has raised three issues in his direct appeal. In his first point he contends the trial court erred in admitting a certain exhibit. The exhibit in question was a copy of a check drawn on the account of victim Flavella Simms. A bank teller testified that Wiley Davis had tried cashing the check at Normandy Bank on July 2, 1987, the day after Flavella Simms' purse containing her checkbook had been stolen. At the trial, over defense counsel's objections, a copy of this check was used in lieu of the original.

Officer Brady testified that he and his partner had seized the check from Normandy Bank, had taken it to the police station and had photocopied it. At the time of trial, the original of that check was in the possession of the Northwoods Police Department in the evidence locker of the other officer. That officer had the only key for access to his evidence locker; however, he had been temporarily reassigned to an undercover narcotics position and no longer reported in regularly to the police station.

Best evidence concerns do not bar the admission of the photocopied check. "The best evidence rule does not preclude the introduction of secondary evidence; it

merely embodies the law's preference for the best available evidence." *State v. Powell*, 648 S.W.2d 573, 575 (Mo.App.1983). A proponent of secondary evidence must prove three things: (1) the original is unavailable, (2) [the unavailability] is not the proponent's fault, and (3) the secondary evidence is trustworthy. *State v. King*, 557 S.W.2d 51, 54 (Mo.App.1977).

In *State v. Strothers*, 798 S.W.2d 723 (Mo.App.1990), upon which appellant relies, the prosecutor introduced the transcript of a defendant's taped confession. 798 S.W.2d at 724. The original tape was locked up in the police department's evidence room and the persons with keys to that room were in another city to testify at a different trial. *Id.* at 725. The officer who had questioned defendant during the recording had not been asked or subpoenaed to bring the tape to court; the officer had not compared the tape with the transcript, did not attest to the transcript's accuracy, and no evidence established the identity of who had prepared the transcript. *Id.* at 724–25. Based on the foregoing, the Southern District determined this evidence should not have been admitted. *Id.*

Unlike *Strothers*, in the case at bar Officer Brady testified the original check had been photocopied in his presence. No one argues that the copy is not trustworthy. However, appellant claims the first two prongs of *King* are not satisfied under circumstances akin to those in *Strothers*. *Strothers* suggests that the prosecutor should issue a subpoena duces tecum to retrieve evidence stored in other officers' personal evidence locker, 798 S.W.2d at 725; otherwise, such evidence may be deemed unavailable due to the fault of the prosecutor. In *Strothers*, if the prosecutor had subpoenaed the tape the day before the trial, those officers who had the evidence room keys (but were out-of-town the day of trial) could have easily retrieved the tape to produce it at Strothers' trial. Nothing in the record here shows such lack of diligence by the circuit attorney. The officer who held the keys was undercover and had been on undercover assignment for several months. Missouri courts have interpreted

the second requirement—that the unavailability is not the fault of the proponent—to mean the proponent has not acted in bad faith to prevent the introduction of the original. *King*, 557 S.W.2d at 54.

Although the circuit attorney had disclosed the existence of the original check to defendant, nevertheless, it clearly was not available to the circuit attorney. There is no showing that he or the police acted in bad faith to prevent the introduction of the original. Appellant did not allege bad faith on the part of the police, nor did he establish the requisite fault necessary to exclude the copy. *King*, 557 S.W.2d at 54. Appellant's first point is denied.

■ Wiley Davis complains in his second point about certain statements made by the circuit attorney during his closing argument. During rebuttal the circuit attorney remarked: "Ladies and gentlemen, the defense tells you you're dealing with the freedom of this man. The defense wants you to let him go out the door so he can prey on other women here in the City." Defense counsel immediately interposed an objection on the grounds that reference to possible future acts constituted improper argument. After the trial court overruled the objection, the circuit attorney concluded his argument saying: "I ask you to return a verdict of guilty on each and every count so that people like [the victims] will not be confronted by him on the streets in the city of St. Louis."

Wiley Davis argues that these comments sought to appeal to the jury's fears that he might later commit the same type of crimes. He states such comments were particularly prejudicial because they motivated the jury to convict him because of his potential future dangerousness.

■ At the outset, we note that broad discretion rests with the trial court in controlling closing argument, with wide latitude accorded counsel in their summation. *State v. Hill*, 808 S.W.2d 882, 887 (Mo.App. 1991). We will reverse a ruling for abuse of discretion only where the argument is plainly unwarranted, *id.*, and only if the State's remarks had a decisive effect on the

jury. *State v. Clark,* 809 S.W.2d 139, 143 (Mo.App.1991); *State v. Long,* 768 S.W.2d 664, 666 (Mo.App.1989).

■ In view of the certainty with which each of defendant's victims identified him, it cannot be said that the circuit attorney's argument caused the jury to return verdicts different from those which otherwise would have been returned. Furthermore, although closing arguments directed toward putting the jurors in fear for their own safety in the event of acquittal have been condemned, the prosecutor may argue the evil that can result to society if a defendant is found not guilty. *State v. Walls,* 744 S.W.2d 791, 798 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). In conclusion, although the comment in question may have been the product of prosecutorial overzealousness, it could not reasonably be held to have had a decisive effect upon the verdicts. Therefore, the trial court did not err in overruling the objection. *State v. Long,* 768 S.W.2d at 666. Appellant's second point is denied.

■ Appellant's third point asks that we find the trial court committed plain error in failing to declare a mistrial when Lucille Harmon, one of the victims, stated that her stolen purse was returned to her by appellant's ex-wife. Appellant complains that such testimony declared to the jury that appellant had possession of Harmon's purse near the time of the robbery and, therefore, must have committed the crime. He argues such evidence was inadmissible hearsay and prejudiced him on the other two counts because the similarity of all three charges might incline the jury to assume his guilt. Alternatively, he posits the motion court erred in not finding counsel ineffective for failing to timely object to Harmon's testimony.

The incident about which appellant complains occurred during the circuit attorney's direct examination of one of the victims about the purse-snatching. The following colloquy occurred:

Q. Did he push you in the shoulder area or the chest area?

A. Chest area.

Q. And did you hit the ground?

A. Yes, sir.

Q. And was that in the street or on the grass?

A. It was on the—right on the sidewalk right by the grass.

Q. *And what happened to your purse?*

A. *His wife brought it back.*

Q. Wait a minute. When he pushed you down, what happened?

A. He snatched it and run down the street.

Q. Was that before you hit the ground, as you hit the ground or after?

A. As I hit the ground.

Q. So he was able to get the purse from you?

A. Sure.

Q. Okay. Now were the Police called?

A. Yes, sir.

Q. Did you talk with them?

A. Yes, sir.

Q. Okay. Now did there come a time when you got your purse back?

A. Yes.

(Emphasis added.)

Defense counsel then interposed an objection which the trial court overruled.

■ Appellant acknowledges the objection was untimely and that no mistrial was requested so that appellate review is limited to review only for plain error. Rule 30.20. To be entitled to plain error relief, appellant must show not only that prejudicial error resulted, he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *State v. Jennings,* 815 S.W.2d 434, 442 (Mo.App.1991). Furthermore, declaration of a mistrial is a drastic remedy that is employed only in the most extraordinary circumstances. *State v. Gillis,* 812 S.W.2d 887, 890 (Mo.App.1991). When a witness unexpectedly volunteers inadmissible information, the action called for rests in the trial court's discretion since the trial court is in the best position to determine the effect of what measures, if any, might be necessary to cure that effect.

*Id.* The same standard controls our review when presented with the claim of trial court error in failing to grant a mistrial due to an unresponsive inadmissible answer from a witness. *Id.*

We find no abuse of discretion, rising to the level of plain error. There is nothing in the record to suggest that the circuit attorney deliberately attempted to elicit this answer. On the contrary, his response reflects his own effort to restrain his witness from blurting out additional unresponsive statements. His further questioning carefully skirted any repetition of her remarks. Finally, abundant evidence at trial established appellant's guilt, including the victim's positive identification of appellant both at the pre-trial lineup and at trial, as well as appellant's own incriminating statements.

We likewise find no merit to appellant's claim that the motion court erred in not finding trial counsel ineffective for failing to voice timely objection. The motion court's findings included:

> The failure to timely object to such testimony was of no consequence. The overwhelming evidence against the movant at trial, including movant's confessions, his identification by the three victims at trial and the fact that at least one of the victims knew movant personally, mitigated any possible prejudice that may have resulted in combined trials.

We agree. Finding no error, we deny appellant's third point.

Appellant's final point attacks the judgment of the motion court denying his Rule 29.15 motion. He argues that the court erred in overruling his claim that defense counsel was ineffective at trial for failing to have filed a motion for severance of the three counts joined for trial against appellant.

Appellate review of the trial court's action on a motion filed under Rule 29.15 is limited to a determination whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). The lower court specifically relied on Rule 24.07 in denying appellant's Rule 29.15 motion. Rule 24.07 provides in part that offenses shall be tried separately only if: "[a] party makes a particularized showing of substantial prejudice if the offense is not tried separately; and ... the existence of a bias or discrimination against the party that requires a separate trial of the offense." The motion court expressly found as follows:

> The facts of the instant case are void of any particularized showing of substantial prejudice. To the contrary, each of these incidents were strikingly similar. Each victim was an elderly black woman. Each of the incidents occurred in a supermarket parking lot. Each of the incidents involved the theft of a purse or a wallet. The incidents all occurred during a five (5) day period between July 1, 1987, and July 5, 1987. In addition, movant has failed to show that any bias or discrimination resulted at trial because of the joined offenses. In fact, if the offenses had been separately charged, a motion for joinder would have been properly sustained.

Notwithstanding Missouri Supreme Court Rule 24.07, whenever two or more offenses are jointly charged in an indictment or information, the court *shall* order both or all offenses to be tried together. Section 545.-885, RSMo 1986. (Emphasis ours). Liberal joinder of offenses is favored to achieve judicial economy. *See State v. Sims,* 764 S.W.2d 692, 696 (Mo.App.1988). While joinder is either proper or improper under the law, the decision to sever is within the trial court's discretion. *Id.* The mere failure to request a severance does not establish prejudice unless the appellant can show that it would have been an abuse of the trial court's discretion to deny a severance. *State v. Hughes,* 787 S.W.2d 802, 804 (Mo.App.1990); *Lytle v. State,* 762 S.W.2d 830, 836 (Mo.App.1988). If the evidence of other crimes would have been admissible at a separate trial, the defendant is not prejudiced by a failure to sever. *Lytle,* 762 S.W.2d at 836. Here, as in *Lytle,* the evidence on each count would have been readily admissible in a trial on any of the counts separately as evidence establishing appellant's knowledge, intent

or common scheme or plan. Appellant's point that his trial counsel was ineffective in not requesting a severance is denied. Finding no merit to any of appellant's claims, we affirm the judgment of the trial court and the Rule 29.15 motion court.

PUDLOWSKI, P.J., and CRIST, J., concur.